UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAMA BROADCASTING, INC.; TAMA
GROUP, L.C.; TAMA RADIO LICENSES
OF JACKSONVILLE, FLORIDA, INC.;
TAMA RADIO LICENSES OF TAMPA,
FLORIDA, INC.; TAMA BROADCASTING
GROUP OF FLORIDA, L.C.; TAMPA
BROADCASTING, LTD.; TAMA RADIO
LICENSES OF SAVANNAH, GEORGIA,          Case No. 3:08-cv-222-J-33TEM
INC.; and CHERRY GROUP, L.L.C.,

        Plaintiffs,

v.

D.B. ZWIRN SPECIAL OPPORTUNITIES
FUND, L.P.,

        Defendant.

_____/

**RESPONSE IN OPPOSITION TO INITIAL FEE
APPLICATION OF FORMER COUNSEL FOR TAMA BROADCASTING, INC.**

Plaintiffs, TAMA BROADCASTING, INC., TAMA GROUP, L.C., TAMA RADIO

LICENSES OF JACKSONVILLE, FLORIDA, INC., TAMA RADIO LICENSES OF TAMPA,

FLORIDA, INC., TAMA BROADCASTING GROUP OF FLORIDA, L.C., TAMPA

BROADCASTING, LTD., and TAMA RADIO LICENSES OF SAVANNAH, GEORGIA, INC.

(collectively, the "**Tama Plaintiffs**")[1] hereby submit the following Response in Opposition to

Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. ("**Fee Application**").

---

[1] The Tama Plaintiffs include all plaintiffs in this action, other than Cherry Group, L.L.C.

# INTRODUCTION

In the words of the United States District Court for the Middle District of Florida (Tampa Division) (Covington, J.), since January 2008, Glenn W. Cherry ('**G. Cherry**'), Charles Cherry, II, Esq. ('**C. Cherry**'), and their counsel Percy Squire, Esq. "have multiplied this litigation in as many federal and state courts as possible to increase the costs of litigation for the receivership, Tama and Tama's lenders, shareholders and directors."  They "have initiated numerous actions before this Court as well as other tribunals . . . [their] objection is but another filing on the mountain of paperwork caused by [their] intentional and vexatious litigation tactics designed solely to multiply litigation that was resolved by the Supreme Court of the State of New York's appointment of a temporary receiver to prevent [them] from further depleting the value of [Tama Broadcasting, Inc.'s ("**Tama**")] assets."[2]  The Court dismissed the Tampa Federal Case without leave to amend, finding "that any further amendment would be futile, would be filed in bad faith, and would unduly prejudice defendants. . . .  **Quite simply, enough is enough.**"  (emphasis added).[3]

When this action was filed in February 2008, G. Cherry did not have authority to instruct C. Cherry or Mr. Squire to file this action.  Quite the opposite, G. Cherry was specifically instructed by Tama's board of directors not to take any legal action on Tama's behalf – not to file this lawsuit.

---

[2] Dr. Glenn W. Cherry, et al., v. D.B. Zwirn Special Opportunities Fund, L.P., et al., United States District Court, Middle District of Florida, Case No. 8:09-CV-0033-T33-EAJ (the "**Tampa Federal Case**").  A true and correct copy of the Order dismissing the case without leave to amend in the Tampa Federal Case is attached hereto as **Exh. F.**

[3] A true and correct copy of the Order dismissing the case without leave to amend in the Tampa Federal Case is attached hereto as **Exh. F.**

On June 12, 2010, in a related lawsuit before the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, the jury entered a verdict specifically finding G. Cherry and C. Cherry liable for self-dealing and for breaching their fiduciary duties to Tama and awarded Tama $257,000 from G. Cherry and $257,000 from C. Cherry for their breaches of fiduciary duty. Separately, the jury found that C. Cherry committed professional malpractice for his conduct in the instant case and in self-dealing corporate transactions, and awarded Tama an additional $410,000 from C. Cherry for professional malpractice.[4]

When the Tama Plaintiffs directed C. Cherry (who is also an attorney and purported to represent the Tama Plaintiffs in the instant case) and Mr. Squire to cease representing the Tama Plaintiffs, C. Cherry and Mr. Squire refused and forced the Tama Plaintiffs to file a motion for an order approving substitution of counsel.  Now, three years after this Court granted the Tama Plaintiffs' motion for an order approving substitution of counsel (Doc. # 52), C. Cherry and Mr. Squire have filed a motion for fees purportedly related to legal services provided to the Tama Plaintiffs.  Nothing could be further from the truth.  Enough is enough.

The Fee Application is flawed both procedurally and substantively.  The Fee Application does not comply with Rule 54 of the Federal Rules of Civil Procedure.  Even if the Fee Application were correct procedurally, the Tama Plaintiffs' former attorneys request fees without a statutory or contractual basis as required by law.  Finally, the Tama Plaintiffs never authorized filing this lawsuit and this lawsuit was initiated for the improper purpose of multiplying litigation.   For these reasons, the Fee Application should be denied.

---

[4] A true and correct copy of the Jury Verdict Form in the Tampa State Case is attached hereto as **Exh**. **B**.

## BACKGROUND

The Tama Plaintiffs and Cherry Group, L.L.C. filed the instant action on or about February 4, 2008 in the Circuit Court of the Fourth Judicial Circuit in and for Nassau County, Florida.  On March 3, 2008, Defendant, D.B. Zwirn Special Opportunities Fund, L.P. ("**DBZ**") removed this action from the Nassau County Circuit Court to this Court.  At the time Plaintiffs filed this action, Glenn W. Cherry ("**G. Cherry**") sat on the board of directors of Tama Broadcasting, Inc. ("**Tama**") and was Tama's CEO and Treasurer.  Ed. A. Williams and Jeffrey Scott were also Tama board members.  Before this action was filed Charles Cherry, II, Esq. ("**C. Cherry**") resigned from his position as a Tama board member.  Despite this resignation, the common stockholders did not designate any additional director, and no additional director was elected to replace him.  Consequently, at the time this lawsuit was filed, Tama's board of directors consisted of G. Cherry, Ed. A. Williams and Jeffrey Scott.  On May 13, 2008, Tama's board of directors removed G. Cherry as an officer of the corporation, and reaffirmed his removal on May 20, 2008 at a meeting of the Board of Directors (*See* Doc. # 30-2 at 2-10).  Concurrent with G. Cherry's removal, Tama's board of directors appointed Dr. Ted Bolton as the Tama's new CEO (Doc. #30-2 at 2-10).  Also on May 13, 2008, Tama's board of directors voted to grant its new CEO, Dr. Ted Bolton, the authority to hire new legal counsel for Tama and to terminate any legal counsel previously hired by G. Cherry or C. Cherry (Doc # 30-2 at 2-10).

On July 15, 2008, Tama signed an Action By Written Consent of the Sole Member and Manager of Tama Group, L.C. and an Action By Written Consent of the Sole Member and Manager of Tama Broadcasting Group of Florida, L.C., and Tama Broadcasting Group of Florida L.C. signed an Action By Written Consent of the General Partner of Tampa Broadcasting, Ltd.  Each of these written consents (1) confirmed that G. Cherry and C. Cherry

(the "**Cherrys**") were not officers or representatives of these entities, (2) confirmed that the Cherrys did not have the authority to act, or to direct this litigation, on behalf of any of these entities, (3) appointed Dr. Ted Bolton to serve as the representative of each entity, (4) directed Dr. Ted Bolton to terminate any legal counsel that G. Cherry and/or C. Cherry had engaged on behalf of any of these entities, including Percy Squire, Esq. and C. Cherry, and (4) directed Dr. Ted Bolton to retain Bush Ross, P.A. as the respective entities' counsel for litigation matters in Florida (Doc # 30 -1 at 24-26).

Additionally, on July 15, 2008, the boards of directors of Tama, Tama Radio Licenses of Tampa, Florida, Inc., Tama Radio Licenses of Jacksonville, Florida, Inc., and Tama Radio Licenses of Savannah, Georgia, Inc. signed actions by written consent, each of which directed Dr. Ted Bolton to terminate any legal counsel that G. Cherry and/or C. Cherry had engaged on their behalf, including Mr. Squire and C. Cherry, and to retain Bush Ross, P.A. as their respective counsel for litigation matters in Florida (doc # 30-1 at 12-16).

On July 16, 2008, the Tama Plaintiffs moved to substitute Bush Ross, P.A. for Percy Squire, Esq. and C. Cherry as their counsel of record (Doc #30). This Court granted the Tama Plaintiffs' motion for an order approving substitution of counsel (Doc. # 52). In the Order, the Court reserved jurisdiction to determine the compensation owed C. Cherry and Mr. Squire by Tama for their services pertaining to the instant litigation.

When this action was filed in February 2008, G. Cherry did not have authority to instruct C. Cherry or Mr. Squire to file this action. Quite the opposite, G. Cherry was specifically instructed by Tama's board of directors not to take any legal action on Tama's behalf. Jeffrey Scott testified under oath that he instructed G. Cherry not to engage any legal counsel or to take

legal action without the knowledge and consent of a majority of the directors.[5]   Specifically, Mr.

Scott testified:

> Q      So would you characterize his conduct as CEO as
> insubordination to the board of directors?
> A      Yes.
>
> Q      Was one of the attorneys that you decided to remove a
> gentleman by the name of Percy Squire, Esq., who was purporting
> to represent Tama in lawsuits in Jacksonville, Florida and New
> York?
> A      Yes.
>
> Q      Did the board ever authorize Percy Squire, Esq. to
> represent Tama Broadcasting, Inc?
> A      No.
>
> Q      So when Dr. Glenn Cherry engaged Percy Squire, Esq.,
> was that outside of his authority as CEO of the company?
> A      He did not give any notice to the board of directors.  I
> would say that was outside of his authority to engage legal counsel.
> I had instructed him directly to not engage any legal counsel or to
> take legal action without giving Black Enterprise Greenwich
> Street, Ed Williams, Jeffrey Scott, some notice and/or some
> discussion of it.  And he violated that directly, time and time
> again.[6]

## ARGUMENT

**I.      The Fee Application is untimely and facially flawed.**

    The Court should deny the Fee Application because it fails to comply with the Federal

Rules of Civil Procedure.  Rule 54 of the Federal Rules of Civil Procedure sets forth the timing

and contents of a motion for attorney's fees.  *See* Fed. R. Civ. P. 54.   *Rule* 54(2)(B) requires a

movant to file a motion for fees within 15 days after the entry of judgment.  *Id.*  The Tama

Plaintiffs filed a voluntary dismissal on October 17, 2008 and the Court entered an order

---

[5] *See* Excerpt of Transcript of Proceedings, Hillsborough County Circuit Court Case No. 08-11492
(the "**Tampa State Case**"), dated May 27, 2008 at page 45-46 attached hereto as **Exh. A.**
[6] *See* Excerpt of Transcript of Proceedings dated May 27, 2008 at page45-46 lines 13-9 attached hereto as
**Exh. A.**

dismissing the case as to the Tama Plaintiffs on November 25, 2009 (Doc #101).  An order granting Tama Plaintiffs' motion for voluntary dismissal qualifies as a final judgment.  *See McGregor v. Bd. of Com'rs of Palm Beach County*, 956 F.2d 1017, 1020 (11th Cir. 1992) (holding that an order granting a plaintiff's motion for voluntary dismissal qualifies as a final judgment for purposes of appeal).  Almost three years later, Tama's former counsel filed the Fee Application.  The Fee Application is untimely; thus, it should be denied.

 In addition to being untimely, the Fee Application is facially flawed.  Particularly, the Fee Application fails to "specify the judgment and the statute, rule and other grounds entitling the movant to the award."  *See* Fed. R. Civ. P. 54*(B)(ii)*.  Accordingly, the Fee Application should be denied.


## II.      No Statutory or Contractual Basis for the recover of fees exists.

In addition to the fatal, procedural flaws above, the substance of Fee Application is not supported by law.  Generally, a fee application is appropriate when one party is entitled — based upon statute or contract — to recover attorney's fees from another party in litigation after judgment. *See* Fed. R. Civ. P. 54.  Here, Tama's former attorneys seek to recover attorney's fees allegedly incurred in this action from their former client — Tama.  It is well settled that courts are prohibited from awarding attorney's fees absent a statute or contract provision authorizing such an award.[7] Here, the Fee Application cites no statutory or contractual basis for an award of attorney's fees and no statutory or contractual basis exists.  As Jeffrey Scott testified, the Tama Plaintiffs never authorized C. Cherry or Mr. Squire to file this action in the first place. However, even if the Court

---

[7] *See In re Manderson*, 121 B.R. 617, 622 (Bankr. N.D. Ala. 1990); *Barton v. Drummond Co.,* 636 F.2d 978 (5th Cir. (Feb. 9, 1981); *Burgess v. Williamson,* 506 F.2d 870 (5th Cir.1975) (all former Fifth Circuit decisions prior to close of business September 30, 1981 adopted as binding law in the new Eleventh Circuit with *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981)).

disagrees, unquestionably, C. Cherry and Mr. Squire were not authorized to perform work on behalf of Tama after May 13, 2008 when G. Cherry was no longer an officer of Tama.

Importantly, the Fee Application is directed only at Tama, not all the Tama Plaintiffs. Notwithstanding, the controlling boards of directors, controlling shareholders, controlling general partners or controlling members of the Tama Plaintiffs never authorized filing the instant action or retaining Mr. Squire or C. Cherry as counsel.

### III.     C. Cherry and G. Cherry have consistently taken actions on behalf of Tama that exceed their authority.

This action is one of many actions that the Cherrys have taken on behalf of Tama that was outside their authority and contrary to Tama's interests.  In the Tampa State Case, a jury found that both G. Cherry and C. Cherry breached their fiduciary duty to Tama by selling Tama's property for nominal consideration and entering into unfair leases which benefited G. Cherry and C. Cherry or their non-Tama companies — all without the knowledge of Jeffrey Scott and Ed Williams.[8]   Similarly, G. Cherry and C. Cherry filed and pursued this action without Tama's authority; hence, no basis exists for Tama to compensate attorneys hired without Tama's consent or approval.

---

[8] *See* Jury Verdict Form Attached hereto as **Exh. B**.

**IV.    The Court should deny the Fee Application because the instant action is part of the Cherrys' overall strategy of multiplying litigation proceedings in various fora to increase the costs for all parties involved.**

The Cherrys have attempted to multiply litigation proceedings in various fora and to increase the costs for all opposing parties.  The Cherrys are involved in at least nine related cases involving the parties to the instant case.

First, DBZ sued Tama and three of its subsidiaries in New York state court[9] for breach of contract stemming from Tama's failure (while under the Cherrys' control) to fulfill its payment obligations under certain financing agreements.  After an improper removal and several dilatory legal maneuvers, the United States District Court for the Southern District of New York noted the voluminous litigation among the parties and cited Tama, then under the Cherrys' control, for improper conduct.[10]  The District Court remanded the lawsuit and reprimanded Tama (referring to the Cherrys and Mr. Squire) for its conduct.  The Court stated:

> "I remand this action back to state court, but note that Tama's conduct has been deeply troubling.  For the brief period during which I have presided over this case, Tama has engaged in numerous tactics that appear motivated by a desire to delay the resolution of plaintiff's breach of contract claim for as long as possible . . . .  At each stage, the Court has been struck by Tama's attempts to delay the efforts made first by the state court and now by this Court to reach the merits of this case.  I remand this case sua sponte because it was improvidently removed to federal court, but I sympathize with plaintiff's frustrated desire to have this case promptly proceed to the merits.  . . .  Additionally, at a conference held on April 14, 2008, Tama made yet another attempt to delay by insisting that the motion for

[9] *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., Tama Radio Licenses of Savannah, Georgia, Inc., Tama Radio Licenses of Tampa, Florida, Inc., and Tama Radio Licenses of Jacksonville, Florida, Inc.*, Case No. 600692/2008, Supreme Court of the State of New York, County of New York.

[10] *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting Inc.*, Case No. 08-CV-3125-SAS, 2008 WL 1862638, at *6 (S.D.N.Y. Apr. 28, 2008) (On March 27, 2008, just days before a hearing in New York state court on an Order to Show Cause why a temporary receiver should not be appointed, Tama (under the direction of the Cherrys, and represented by Percy Squire, Esq., with C. Cherry of counsel) removed the action to federal court.  Shortly thereafter, Tama "conceded that removal may have been improvident and requested that the case be remanded back to state court.")  A true and correct copy of the Order remanding the case is attached hereto as **Exh. C.**

appointment of a temporary receiver could not be decided without an evidentiary hearing. . . ." *Id.*

Following remand, the Supreme Court of the State of New York appointed Mr. Scott Savage as a temporary receiver over Tama and all of its assets.[11]

Second, the Cherrys filed a complaint with the FCC Enforcement Division, which alleged that DBZ and Tama violated the Federal Communications Act.[12]  After receiving responses from the parties, the FCC entered an order on February 17, 2009 terminating the Cherry's complaint and reserving the right to investigate the conduct of the Cherrys.[13]

Third, Tama (under new management) filed case number 08-VS-011492 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida against the Cherrys and their company, Group Assets (previously defined herein as the Tampa State Case). On May 27, 2008, the court entered a temporary injunction enjoining the Cherrys from interfering with Tama's business and from acting on Tama's behalf (Doc 38-2).  The court also entered two orders compelling the Cherrys to produce documents and sanctioned the failure to

---

[11] On July 21, 2008, the Supreme Court of New York, County of New York, entered an order requiring the appointment of a receiver over Tama and its assets (Doc # 29-2). The court found: ". . . it is undisputed that Defendants have defaulted on loan obligations . . ."; "'the actions of the various antagonists threaten the well being and continued viability' of Defendants."; "Most notably, it is undisputed, WTMP-FM and WTMP-AM were running in a continuous loop with no new programming for at least two weeks in May, 2008."; "the motion [to appoint receiver] should be granted based upon the aforementioned undisputed evidence, in conjunction with the clearly hostile relationship between the Cherrys (who have litigated aggressively in both State and Federal courts) and [others] . . ." (Doc # 29-2 at 6-7)

[12] *In the Matter of Tama Broadcasting, Inc., Tama Radio Licenses of Tampa, Florida, Inc., Tama Radio Licenses of Jacksonville, FL, Inc., Tama Radio Licenses of Savannah, GA, Inc., and D.B. Zwirn & Co., L.P., parent of D.B. Zwirn Special Opportunities Fund, L.P., Bernard Radio LLC, and Straight Way Radio*, File No. EB-08-IH-0692, before the Federal Communications Commission, Washington, D.C.

[13] A true and correct copy of the February 17, 2009 FCC Order is attached hereto as **Exh. D.**  There have been numerous other FCC filings and Orders since February 17, 2009, but none have been decided in favor of the Cherrys.

comply with discovery obligations.[14]  The Tampa State Case resulted in a jury verdict in favor of Tama and against the Cherrys and Group Assets.[15]

Fourth, on January 9, 2009, the Cherrys filed an action purportedly on behalf of WHYZ Radio, L.P., Dr. G. Cherry, Charles W. Cherry, II, and Group Assets LLC against several Black Enterprise/Greenwich Street entities, DBZ, and several others in the United States District Court, Middle District of Florida, Case No. 8:09-CV-0033-T33-EAJ (the "**Tampa Federal Case**"). The Tampa Federal Case purported to bring class action claims against DBZ and other entities and non-class claims against the Black Enterprise/Greenwich Street entities.  Ultimately, the court adopted the Magistrate's report and recommendation granting each of the defendants' motions to dismiss.  Further, the court dismissed the Tampa Federal Case without leave to amend, finding "that any further amendment would be futile, would be filed in bad faith, and would unduly prejudice defendants. . . .  Quite simply, enough is enough."[16]

Fifth, on March 13, 2009 in the Tampa State Case, the Cherrys attempted to add third-party claims (not based on indemnification, contribution or subrogation and therefore improper) against DBZ, the Black Enterprise/Greenwich Street entities and others.  These claims relate to the same financing agreements and are based on many of the same allegations of fact as the instant action and the Tampa Federal Case.[17]

Sixth, on March 17, 2009, just four days after attempting to bring the third-party claims

---

[14]  A true and correct copy of the court's February 3, 2009 Second Order Granting Plaintiff's Motion to Compel, which sanctions the Cherrys, is attached hereto as **Exh. E.**

[15] A true and correct copy of the Jury Verdict Form in the Tampa State Case is attached hereto as **Exh**. **B**.

[16] A true and correct copy of the Order dismissing the case without leave to amend in the Tampa Federal Case is attached hereto as **Exh. F.**

[17]  A true and correct copy of the Cherrys and Group Assets' Answer, Counterclaim, and Third Party Claim to Amended Complaint is attached hereto as **Exh. G.**

in the Tampa State Case, the Cherrys filed an amended complaint in the Tampa Federal Case.[18] This pleading contains claims related to and based on many of the same allegations as the Tampa State Case and the instant case.

Seventh, in May 2009, the Cherrys and Mr. Squire filed a related case in the United States District Court for the Southern District of Ohio (Eastern Division) (Case No. 2:09cv428 styled *Percy Squire Co., LLC v. Federal Communications Commission*) attempting to enjoin the FCC from approving the sale of Tama radio licenses.  This case was dismissed because Mr. Squire failed to exhaust his administrative remedies and he lacked standing.[19]

Eighth, on February 18, 2010, the Cherrys appealed the Order dismissing the case without leave to amend in the Tampa Federal Case.  The United States Court of Appeals for the Eleventh Circuit per curiam affirmed the Middle District Court's decision.[20]

Ninth, on September 14, 2010, the Cherrys appealed the Order denying their Motion Requiring Plaintiff to Deposit Rent or Alternatively for Rent Determination in the Tampa State Case.  The Second District Court of Appeals also per curiam affirmed the trial court's decision.[21]

Furthermore, in orders dated November 12, 2009[22] and November 24, 2009,[23] the District Court in the Tampa Federal Case denied the Cherrys' motion to admit Mr. Squire pro hac vice.

---

[18]  A true and correct copy of the Amended Complaint is attached hereto as **Exh. H.**

[19]  A true and correct copy the Opinion and Order dismissing the case is attached hereto as **Exh. I.**

[20]  A true and correct copy of the United States Court of Appeals for the Eleventh Circuit's order affirming the dismissal without leave to amend in the Tampa Federal Case is attached hereto as **Exh. J.**

[21]  A true and correct copy of the Second District Court of Appeal's order affirming the trial court's decision is attached hereto as **Exh. K.**

[22]  A true and correct copy of the November 12, 2009 order entered in the Tampa Federal Case attached hereto as **Exh. L.**

[23]  A true and correct copy of the November 24, 2009 Order in the Tampa Federal Case is attached hereto as **Exh. M.**

The District Court noted the several cases[24] in Florida alone relating to the same parties and issues, determined that Mr. Squire was in violation of Rule 1-3.10(a) (2) of the Rules Regulating the Florida Bar, and determined that the pro hac vice motion must be denied pursuant to Local Rule 2.02(a).

This Court has noted the Cherrys' litigation tactics as well.  On November 25, 2009, this Court entered an Order detailing the Cherry's litigation tactics:  "The Cherrys, however, did not intend to go quietly.";  "Not to be deterred, Percy Squire, Esq. and C. Cherry, still purporting to act as 'Counsel for Plaintiffs,' filed a Notice of Appeal . . .";  "Percy Squire, Esq. and C. Cherry filed a second Amended Notice of Appeal (Doc. # 78) this time noting the fact that 'the undersigned was determined . . . to no longer represent the Tama parties' but nevertheless appealing the Motion to Substitute on behalf of the Cherry Group and the Tama Parties." (Doc # 101).

Much of this vexatious litigation can be explained by counsel to the Cherrys, Mr. Percy Squire's vendetta against DBZ.  DBZ previously enforced a financing agreement against Mr. Squire personally and his company, Esq. Communications, Inc.  Mr. Squire's personal litigation with DBZ apparently caused himself and Esq. Communications to file bankruptcy.  During the bankruptcy proceedings, Judge Perlman, U.S. Bankruptcy Judge for the Southern District of Ohio, remarked that he observed conduct by Mr. Squire that he had never seen before in a litigation proceeding: "[I] had occasion to observe a couple of times in the course of these cases [conduct] that I've never seen anything like.  I suppose it was the kind of representation that Mr.

---

[24] The several Florida cases are: (1) the Tampa State Case (Case No. 08-11492, Hillsborough County Circuit Court); (2) the Jacksonville Federal Action (08-222, M. D. Fla.); (3) the Tampa Federal Case (09-33, M.D. Fla.); (4) Tama v. Group Assets (08-1277, M.D. Fla.) (remanded back to state court) (a true and correct copy the 08-1277 Remand Order is attached hereto as **Exh. N**); (5) Tama v. Group Assets (08-1307, M.D. Fla.) (remanded back to state court) (A true and correct copy the 08-1307 Remand Order is attached hereto as **Exh. O**); (6) Cherry v. Federal Communications Commission (09-680, M.D. Fla.); and (7) Group Assets v. Fortress Investment Group (09-1530, M.D. Fla.).

Squire has, coupled with the fact that he is a very aggressive and imaginative lawyer himself which made this [a] difficult case. A man with a great deal to lose was doing everything he could to see if he couldn't pull something out without paying too much attention to the niceties of court procedure, Bankruptcy Court Procedure."[25]

Courts have reprimanded and admonished the Cherrys and the Cherrys' lawyers for their actions in multiple fora. Moreover, C. Cherry was found liable for legal malpractice by a jury in the Tampa State Case concerning his representation of Tama.[26] The Cherrys' efforts to multiply the litigation may rise to the level of sanctionable conduct under Rule 57.105 Florida Statutes and Rule 11 of the Federal Rules of Civil Procedure. At a minimum, Tama should not be held responsible for attorney's fees incurred during unauthorized and often inappropriate legal action.

### V.      In the Alternative, Tama Requests an Evidentiary Hearing.

Tama's former attorneys are not entitled to any compensation pursuant to the Fee Application. However, if the Court is inclined to disagree, Tama Plaintiffs request an evidentiary hearing concerning both entitlement and the reasonableness of the attorney's fees alleged. An evidentiary hearing is appropriate when factual disputes exist and the written record is not sufficiently clear. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Because this response addresses only the issue of entitlement to attorney's fees, the Tama Plaintiffs further request an opportunity to submit evidence in opposition to the Fee Application under Rule 54(d)(2)(C) should the Court find that a fee award is appropriate pursuant to the Fee Application.

---

[25] In re Communications, et. al., Case No. 1:05-bk-16685, United States Bankruptcy Court for the Southern District of Ohio, Dkt. #390 at 10:10-17.
[26] *See* Jury Verdict Form Attached hereto as **Exh**. **B**.

## CONCLUSION

The Court should deny the Fee Application for the following reasons:

(1) The Fee Application fails to comply with Rule 54 of the Federal Rules of Civil Procedure;[27]

(2) No basis in contract or statute exists to award fees to Tama's former attorneys;

(3) The Cherrys were not authorized to initiate or pursue this case on behalf of the Tama Plaintiffs; and

(4) The Cherrys and their lawyers' actions in this case were improper because they were a part of the Cherrys' overall strategy of multiplying litigation proceedings in various fora to increase the costs for all parties involved.

WHEREFORE, the Tama Plaintiffs respectfully request that the Court deny the Fee Application and grant such other and further relief the Court deems appropriate. Alternatively, if the Court is inclined to award any attorney's fees pursuant to the Fee Application, the Tama Plaintiffs request an evidentiary hearing to determine the reasonableness of the requested attorney's fees.

---

[27] Mr. Squire characterizes the fee application as an "initial" fee application and states that the application will be supplemented "with the statement of Attorney Charles Cherry upon his return to the United States." However, Rule 3.01 (c) of the Local Rules of the Middle District of Florida prohibits a party from filing "any reply or further memorandum directed to the motion or response . . . unless the Court grants leave."

Respectfully submitted,

BUSH ROSS, P.A.

Dated: September 29, 2011

By: */s/ J. Carter Andersen*
    H. Bradley Staggs
    Florida Bar No. 980773
    *bstaggs@bushross.com*
    J. Carter Andersen
    Florida Bar No. 0143626
    *candersen@bushross.com*
    Meredith A. Freeman
    Florida Bar No. 0020969
    *mfreeman@bushross.com*
    Post Office Box 3913
    Tampa, Florida 33601-3913
    (813) 224-9255; (813) 223-9620 – FAX

Attorneys for:
TAMA BROADCASTING, INC.
TAMA GROUP, L.C.
TAMA RADIO LICENSES OF
    JACKSONVILLE, FLORIDA, INC.
TAMA RADIO LICENSES OF TAMPA,
    FLORIDA, INC.
TAMA BROADCASTING GROUP OF
    FLORIDA, L.C.
TAMPA BROADCASTING, LTD.
TAMA RADIO LICENSES OF SAVANNAH,
    GEORGIA, INC.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on September 29, 2011, I electronically filed a true and correct copy of the foregoing Amended Notice of Appearance with the Clerk of the United States District Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the document(s) to the following parties in the manner of service indicated below:

    */s/ J. Carter Andersen*
    ATTORNEY

16

**<u>Via the CM/ECF system which will send a Notice of Electronic Filing to</u>:**

Charles W. Cherry, II, Esq.
Fentrice Driskell, Esq.
David Hywel Leonard, Esq.
Percy Squire, Esq.

1032662.2