UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHERRY GROUP, LLC,

                Plaintiff,

vs.                                           Case No. 3:08-cv-222-J-34PDB

D.B. ZWIRN SPECIAL
OPPORTUNITIES FUND, L.P.,

                Defendant.
_____/

**O R D E R**

**THIS CAUSE** is before the Court sua sponte. On June 19, 2014, the Court entered an Order questioning whether it had diversity jurisdiction over this action as alleged in Plaintiff's First Amended Complaint with Class Allegations (Verified) (Doc. 108; Amended Complaint). See generally Order (Doc. 134). Plaintiff filed a response to the Court's Order on July 2, 2014. See Response of Cherry Group, LLC to June 19, 2014 Order Docket 134 (Doc. 135; Plaintiff's Response). Defendant also filed a response to the Court's Order on July 8, 2014, in which it maintains that the Court has federal question jurisdiction to hear this action. See Fortress Value Recovery Fund I LLC's Response to Court's June 19, 2014 Order Seeking Information Regarding Subject Matter Jurisdiction (Doc. 136; Defendant's Response). For the reasons set forth below, the Court finds that it lacks diversity jurisdiction over this action. In addition, the Court determines that it does not have federal question jurisdiction and should decline to exercise supplemental jurisdiction over the case. Therefore, the Court will remand the matter to Florida state court. However, before doing

so, the Court will consider the pending Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. (Doc. 123; Fee Application).

**I.      Background**

This action began in state court on February 8, 2008, when Plaintiff Cherry Group, LLC and several entities known as the Tama Parties,[1] filed an Amended Verified Complaint for a Temporary Restraining Order and Preliminary and Permanent Injunction (Doc. 2; Initial Complaint).  The Initial Complaint alleged violations of the Uniform Commercial Code and the Federal Communications Act, and as such, on March 3, 2008, Defendant removed the Complaint to federal court based on federal question jurisdiction.  See Notice of Removal (Doc. 1). On November 25, 2009, the Court dismissed the Tama Parties from the case, and allowed Cherry Group, LLC, the sole remaining Plaintiff, to file an amended complaint. See Order (Doc. 101).  Plaintiff then filed the Amended Complaint on January 8, 2010, in which it raises only state-law claims and alleges that "[t]his Court has jurisdiction over all causes of action asserted herein under 28 U.S.C. § 1332." See Amended Complaint at 1, 15-22.  In support of the assertion of diversity jurisdiction, Plaintiff states that it is "a corporate citizen of Florida and Defendant is a citizen of Delaware, with its principal place of business in New York and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." Id.  Plaintiff further alleges that "Cherry Group is a Florida limited liability company," and that Dr. Glenn W. Cherry and Charles W. Cherry II "are the only two managing members of Cherry Group." Id. ¶¶ 3, 8.  However, as explained in the

---

[1] The Tama Parties consisted of Tama Broadcasting, Inc., Tama Group, L.C., Tama Radio Licenses of Jacksonville, Florida, Inc., Tama Radio Licenses of Tampa, Florida, Inc., Tama Broadcasting Group of Florida, L.C., Tampa Broadcasting, Ltd., and Tama Radio Licenses of Savannah, Georgia, Inc.

Court's prior Order, these allegations are insufficient to establish the citizenship of the parties. See Order (Doc. 134).

## II.     Subject Matter Jurisdiction

### A.     Diversity

For a court to have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "'all plaintiffs must be diverse from all defendants.'" Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999). An unincorporated business association or entity, such as a general or limited partnership or a limited liability company, is not a "citizen" under 28 U.S.C. § 1332(a) in its own right. See Xaros v. U.S. Fid. & Guar. Co., 820 F.2d 1176, 1181 (11th Cir. 1987) (recognizing that "[t]he Supreme Court has declined to depart from the common law rule that unincorporated associations are not juridical personalities to which diversity jurisdiction should be extended"); see also Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182, 184 (3d Cir. 2008); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021-22 (11th Cir. 2004) (per curiam). Instead, "the citizenship of its members is determinative of the existence of diversity of citizenship." Xaros, 820 F.2d at 1181; see also Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990) (concluding that "diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of all the members, the several persons composing such association, each of its members" (internal quotation marks and citations omitted)); Swiger, 540 F.3d at 182; Rolling Greens MHP, L.P., 374 F.3d at 1021 (recognizing "the long-standing rule that the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all the members composing the organization"); Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1089

(11th Cir. 2010) ("General partnerships, limited partnerships, joint stock companies, and unincorporated membership associations are all treated as citizens of every state of which any partner or member is a citizen." (internal quotation omitted)).

In its Response, Plaintiff Cherry Group, LLC states that it is "a Florida limited liability company comprised solely of two members: Charles W. Cherry II, a citizen of Florida, and Dr. Glenn W. Cherry, also a citizen of Florida." Plaintiff's Response at 2. Accordingly, the Court is satisfied that Plaintiff is a citizen of Florida. With respect to Defendant, Plaintiff submits the Declaration of Elise Hubsher (Hubsher Decl.), dated December 21, 2009, which Defendant previously filed in a separate lawsuit, also involving the Cherrys. See Plaintiff's Response at 3; Ex. D; see also Grp. Assets, LLC v. Fortress Inv. Grp., No. 8:09-cv-1530-T-33EAJ, Doc. 20 (M.D. Fla. filed Dec. 24, 2009). In the Hubsher Declaration, Elise Hubsher, the Managing Director of Fortress Investment Group, explains that Defendant D.B. Zwirn Special Opportunities Fund, L.P. is now known as Fortress Value Recovery Fund I, LLC (VRF). See Hubsher Decl. ¶ 1. Hubsher states that: (1) VRF is a "Delaware limited liability company," (2) two of its members are "Florida domiciled trusts," and (3) "[a]t least one beneficiary of each of these trusts is an individual who is a Florida citizen." Hubsher Decl. ¶¶ 2-4. As such, the trusts are citizens of Florida and, as members of VRF, render VRF a citizen of Florida as well. See Landstar Global Logistics, Inc. v. Total Transp. Serv., LLC, Case No. 3:08-cv-1212-J-32JRK, 2009 WL 997222 (M.D. Fla. Apr. 14, 2009) ("[I]t is necessary to know who the beneficiaries of the [trust] are (and their citizenships) so that the citizenship of the trust can be determined based on all of its members."); Xaros, 820 F.2d at 1181. In light of the foregoing, the Court determines that both Plaintiff and Defendant are

citizens of Florida and therefore this Court lacks diversity jurisdiction over the action. See Report and Recommendation, 8:09-cv-1530-T-33EAJ, Doc. 43 at 3-4 (M.D. Fla. entered June 22, 2010) (finding a lack of diversity jurisdiction where the Cherrys were plaintiffs and Fortress Value Recovery Fund I LLC formerly known as D.B. Zwirn Opportunities Fund, L.P. was a defendant) adopted by Order, 8:09-cv-1530-T-33EAJ, Doc. 55 (entered July 26, 2010).[2]

### B.     Federal Question

Next, Defendant argues that the Court "has jurisdiction over this matter because the [Amended Complaint] raises federal questions." See Defendant's Response at 3-4. Defendant contends that the Amended Complaint includes "numerous stated federal issues, which are actually disputed and substantial," and cites to Plaintiff's class action allegation that common issues of law and fact exist regarding whether Defendant violated certain federal statutes. Id. (citing Amended Complaint ¶ 56). In addition, Defendant points to the allegation in Plaintiff's claim for civil conspiracy that Defendant conspired to illegally terminate Glenn Cherry for filing a complaint, asserting violations of federal law, with the Federal Communications Commission (FCC). Id. at 4 (citing Amended Complaint ¶ 66).

---

[2] Plaintiff argues that VRF has made "inconsistent representations" regarding its citizenship and submits filings from other cases in which, according to Plaintiff, VRF identified itself as a citizen of Delaware and New York. See Plaintiff's Response at 2-3, Exs. A-B. However, upon review of the pleadings from those cases, it appears that VRF alleged that it "is a limited liability company organized under the laws of Delaware with its principal place of business . . . [in] New York . . . ." See Plaintiff's Response, Ex. A at 2; id., Ex. B at 2. As discussed in the Court's prior Order, this information, while it may be true, is not relevant to VRF's citizenship. See Order at 4. Thus, Plaintiff's contention that based on those representations "VRF should be deemed a Delaware citizen" is unavailing. Plaintiff's Response at 3. The facts and the law establish that VRF is a citizen of Florida; the Court cannot create diversity jurisdiction by "deeming" it otherwise. Moreover, given the clear, uncontradicted statements in the Hubsher Declaration, the Court finds that jurisdictional discovery is unnecessary. Id. at 4.

Upon review of the Amended Complaint, the Court observes that Plaintiff asserts the following state law claims: tortious interference with contractual relationship (Count I), tortious interference with advantageous business relationship (Count II), civil conspiracy (Count III), unjust enrichment (Count IV), actual fraudulent transfer (Count V), constructive fraudulent transfer (Count VI), civil conspiracy (Count VII), aiding and abetting fraudulent conveyance (Count [VIII]), and unjust enrichment (Count IX).  Nevertheless, Defendant is correct that, "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims."  See Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004).[3]  A state-law claim raises substantial questions of federal law where federal law is "'an essential element'" of the claim and the federal right or immunity that forms the basis of the claim is "'such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another.'"  Id. (quoting Mobil Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir. 1982)).  As such, "'[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'"  Id. (quoting Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986)).  Rather, to confer federal jurisdiction, "the state-law claim must 'really and substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law.'"  Id. (quoting Mobile Oil Corp., 671 F.2d at 422).

Although the Amended Complaint does contain references to federal statutes and the filing of an FCC complaint, the referenced laws do not form the basis of any of Plaintiff's

---

[3] Defendant does not contend that any of Plaintiff's claims are preempted by federal law.

claims, nor do they constitute an "essential element" of the causes of action. See Amended Complaint at 14-16; Dunlap, 381 F.3d at 1290.  While Plaintiff asserts that "common questions of law" exist with respect to whether Defendant violated certain federal statutes, it is difficult to discern, given the causes of action alleged, how those federal statutes are relevant to the claims.  Nevertheless, even if the cited federal laws are somehow implicated, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Dunlap, 381 F.3d at 1290 (internal quotation omitted). Indeed, "[t]he fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction– the implicated federal issue must be substantial." Id. at 1291-92.  The parties have failed to present any explanation or argument regarding how this action involves a substantial dispute or controversy regarding the validity, construction, or effect of any federal law. Id. at 1290.  As such, the Court finds that the fleeting and ambiguous references to federal law in the Amended Complaint do not raise a substantial issue of federal law, and therefore the Court does not have federal question jurisdiction over this case.

### C. Supplemental

Because Plaintiff's original complaint did assert a cause of action arising under federal law, the parties correctly assert that "if a district court has subject matter jurisdiction over . . . [an] action at the time of removal, subsequent acts do not divest the court of its jurisdiction over the action." See Behlen v. Merrill Lynch, 311 F.3d 1087, 1095 (11th Cir. 2002).  Indeed, where a district court has federal question jurisdiction over the original complaint the Court may continue to exercise supplemental jurisdiction over the state law claims, even when the

federal claims are dropped. Id. "However, simply because remand is not required does not mean the Court cannot later determine remand is appropriate." BB&T Fin., FSB v. DeGeorge, No. 3:10-cv-1069-J-32MCR, 2011 WL 2433500, at *1 (M.D. Fla. Apr. 11, 2011). In Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988), the Supreme Court held that, "upon a proper determination that retaining jurisdiction would be inappropriate," a district court had discretion to remand supplemental state law claims after the plaintiff dropped the federal claims on which removal was originally based. Carnegie-Mellon Univ., 484 U.S. at 357. Specifically, the Supreme Court instructed courts to deal with these cases "in the manner that best serves the principles of economy, convenience, fairness, and comity . . . ." Id. In addition, when determining whether remand is appropriate, courts should also consider whether the plaintiff has attempted to manipulate the forum by dropping its federal claims following removal. Id. Accordingly, the Court will weigh the Carnegie-Mellon factors to determine whether remand is warranted at this stage of the proceedings. See Savoy v. Pasco Cnty. Sch. Bd., No. 8:12-cv-1551-T-24TGW, 2012 WL 3128943, at *1 (M.D. Fla. July 31, 2012); BB&T Fin., FSB, 2011 WL 2433500, at *1-2; Lake Cnty. v. NRG/Recovery Grp., Inc., 144 F. Supp. 2d 1316, 1320 (M.D. Fla. May 16, 2001).

Upon review, the Court determines that economy and convenience weigh in favor of remand. Although this case has been pending for an extended period of time, the suit remains in its early stages. Because of its pending motion to dismiss (Doc. 119), Defendant has not yet answered the Amended Complaint, and given the convoluted procedural history of the case, it does not appear that the parties have engaged in any substantial discovery. Although the Court addressed a number of preliminary, non-substantive motions regarding

the substitution of counsel, the procedural posture of the case, and its relation to cases in other divisions of this Court, "[t]he Court has not yet expended a significant amount of judicial labor and time" on the actual merits of the lawsuit, and thus remand "would not require a state court to duplicate the efforts of this court." Lake Cnty., 144 F. Supp. 2d at 1321.

Moreover, "since only state law claims remain, principles of comity weigh in favor of remand." Savoy, 2012 WL 3128943, at *1; BB&T Fin., FSB, 2011 WL 2433500, at *2. With respect to fairness, the Carnegie-Mellon Court addressed this factor in the context of whether a plaintiff was attempting to engage in forum shopping. See Carnegie-Mellon Univ., 484 U.S. at 357; Lake Cnty., 144 F. Supp. 2d at 1321. However, given Plaintiff's attempt to invoke this Court's diversity jurisdiction, see Amended Complaint ¶ 1, the Court is not concerned that Plaintiff is attempting to forum shop by dropping the federal claims. Accordingly, interests of fairness do not weigh against remand. In consideration of the factors set forth in Carnegie-Mellon, the Court declines to exercise supplemental jurisdiction over the state law claims remaining in this action.[4] See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); Busse v. Lee Cnty., 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts

---

[4] Although the Supreme Court issued the Carnegie-Mellon decision prior to the codification of supplemental jurisdiction in 28 U.S.C. § 1367, the Court notes that remand is authorized under that statutory provision as well. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over a state claim if: "the district court has dismissed all claims over which it has original jurisdiction . . . ." Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). Accordingly, because only state law claims remain in this action, § 1367(c)(3) authorizes the Court to decline supplemental jurisdiction.

to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ., 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine- judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because this case was originally filed in state court and removed to federal court, pursuant to 28 U.S.C. § 1441, and because no federal claims remain, the Court will exercise its discretion to remand the remaining claims to state court. Id.

### III. Fee Application

The Court notes that former counsel for the Tama Parties, Percy Squire and Charles Cherry (Former Counsel), filed an Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. (Doc. 123; Fee Application) on September 12, 2011. In the Fee Application, Former Counsel appear to request over $412,645.26 in fees for their representation of the Tama Parties prior to their removal as counsel on August 27, 2008. See Fee Application at 1; see also Order (Doc. 52). Inexplicably, the Fee Application requests $91,470.26 in fees for "Torys, LLP," a law firm which never appeared in this action. See Fee Application at 1. In addition, Former Counsel request $321,175.00 for "Percy Squire Co., LLC," and an amount to be determined for Charles Cherry, Esq. Id. Although Former Counsel indicated that the Fee Application would be "supplemented with the statement of Attorney Charles Cherry upon his return to the United States," they filed no such supplement. Id.

On September 29, 2011, the Tama Parties and Defendant filed responses in opposition to the Fee Application. See Defendant Fortress Value Recovery Fund I LLC's Response in Opposition to Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. (Doc. 124; Defendant's Fee Response); Response in Opposition to Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. (Tama's Fee Response). The Honorable Thomas E. Morris, United States Magistrate Judge, entered a Report and Recommendation (Doc. 126; Report) on November 29, 2011, in which he recommends that the Court deny the Fee Application. See Report at 11. Former Counsel objected to the Report and Defendant as well as the Tama Parties responded to those objections. See Objections of Cherry Group, LLC, Dr. Glenn W. Cherry, Charles W. Cherry and Percy Squire to November 29, 2011 Report and Recommendation (Doc. 127; Objections), filed December 12, 2011; D.B. Zwirn Special Opportunities Fund, L.P.'s Response to Objection to November 29, 2011 Report and Recommendation (Doc. 128) and Tama Broadcasting, Inc.'s Response to Objections of Cherry Group, LLC, Dr. Glenn W. Cherry, Charles W. Cherry and Percy Squire to November 29, 2011 Report and Recommendation (Doc. 129), both filed December 29, 2011. Upon review, the Court determines that the Fee Application is due to be denied.

The one-page Fee Application fails to explain from whom Former Counsel seek to recover the requested attorneys' fees. To the extent Former Counsel request an award of fees from Defendant, this request is plainly without merit. First, Former Counsel fail to identify any legal basis for an award of fees against Defendant. Notably, the Tama Parties, whom Former Counsel represented, voluntarily dismissed their action against Defendant.

See Notice of Voluntary Dismissal Without Prejudice (Doc. 72), filed October 17, 2008. Therefore, Former Counsel has not demonstrated any entitlement to an award of fees on the theory that their former clients were somehow a prevailing party.[5]  See Report at 8.  In addition, Judge Morris recommends that the Court deny the Fee Application because it fails to comply with the requirements of Rule 54(d)(2), Federal Rules of Civil Procedure (Rule(s)). Id. at 6.  Specifically, the Magistrate Judge finds that the Fee Application is untimely under the Rule because Former Counsel filed it nearly two years after the Court dismissed the Tama Parties from this lawsuit.  Id. at 7-8; Rule 54(d)(2)(B)(i).  The Fee Application also fails to specify "the judgment and the statute, rule or other grounds entitling the movant to the award" as required by Rule 54(d)(2)(B)(ii).  Id. at 8-9.  Although Former Counsel object to the Magistrate Judge's finding that the Fee Application is untimely, they do not offer any response to Judge Morris' determination that the Tama Parties were not "prevailing parties" against Defendant.  See Objections at 1-2.  Most significantly, Former Counsel still fail to identify any legal grounds entitling them or their former clients to an award of fees against Defendant. Id. at 1-3.  Thus, regardless of whether the Fee Application is timely filed, absent

---

[5] Because Former Counsel fail to identify the legal basis for their request for fees, it is difficult to properly analyze the request.  However, it bears noting that generally, the right to recover attorney's fees as a prevailing party belongs to the party itself, not its attorney.  Long v. Morton Plant Hosp. Ass'n, Inc., 265 F. App'x 798, 800 (11th Cir. 2008) ("[W]e have determined that generally, fee-shifting statutes create a claim only for the prevailing party, not the party's lawyer.").  As such, even if some authority existed to support the request, Former Counsel likely lack standing to pursue a claim for fees against Defendant.  See, e.g., Long, 265 F. App'x at 800 (holding that only the party, not his lawyer, had standing to apply for fees under the Americans with Disabilities Act); Reeves v. Astrue, 526 F.3d 732, 738 (11th Cir. 2008) (finding that under the Equal Access to Justice Act "attorney's fees are awarded to the prevailing party, not to the prevailing party's attorney"); Willis v. Gov't Accountability Office, 448 F.3d 1341, 1346 (Fed. Cir. 2006) (concluding that only the prevailing party and not the attorney has the right to assert a claim for attorney's fees under the Civil Service Reform Act); Brown v. Gen. Motors Corp., Chevrolet Div., 722 F.2d 1009, 1011 (2d Cir. 1983) ("Under [Section 1988] it is the prevailing party rather than the lawyer who is entitled to attorney's fees.").

citation to any legal basis authorizing an award of attorneys' fees against Defendant, this request is due to be denied.

Alternatively, the Fee Application may constitute Former Counsel's attempt to recover unpaid attorneys' fees from the Tama Parties, their former client. Specifically, on August 27, 2008, the Magistrate Judge granted the Tama Parties' Motion for Order Approving Substitution of Counsel (Doc. 30; Motion to Substitute) in which the Tama Parties requested leave to substitute Bush Ross, P.A. for Percy Squire, Esq. and Charles Cherry, II, Esq. as their counsel of record in this case. See Order (Doc. 52). In the Order, the Magistrate Judge reserved jurisdiction "to determine the compensation owed Charles Cherry II, Esq. and Percy Squire, Esq. by Tama Broadcasting, Inc. for their services pertaining to the instant litigation." Id. at 8. Notably, during the August 14, 2008 hearing on the Motion to Substitute, Charles Cherry argued that if Cherry and Squire were to be substituted out as counsel, the Court should order the Tama Parties to pay the outstanding attorneys' fees owed to them. See Motion Hearing Transcript (Doc. 54; Tr.) at 50. In response to this request, Judge Morris instructed that:

> at this point, at least, that issue is not before the court on proper motion. And if there's a problem in getting paid, that dispute would be towards Tama. Whether that would be appropriate in this case or some other case, I won't give an opinion on at this point. But it needs to be raised properly with the court one way or the other, on that issue, certainly.

Id. Inexplicably, Former Counsel failed to file any such motion or pursue the matter any further in this Court for over three years.

Despite Former Counsel's failure to cite to any legal authority in support of its request, the Court recognizes that "there is a long tradition of sustaining jurisdiction to determine fees

due an attorney dismissed by a client in a pending action." See Broughten v. Voss, 634 F.2d 880, 882 (5th Cir. 1981).[6] Indeed,

> "[t]he law seems well settled that a federal district court may condition the substitution of attorneys in litigation pending before it upon the client's either paying the attorney or posting security for the attorney's reasonable fees and disbursements, as these may be determined. This power resides in the federal court as ancillary to its conduct of the litigation."

Id. (quoting National Equip. Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784, 786 (2d Cir. 1963)). However, "the exercise of the power rests in the reasonable discretion of the court." Doggett v. Deauville Corp., 148 F.2d 881, 883 (5th Cir. 1945); see also Pay Television of Greater N.Y. v. Sheridan, 766 F.2d 92, 94 (2d Cir. 1985) ("[T]he decision whether to fix the fees due a withdrawing attorney lies within the discretion of the district court."). The Doggett court reasoned that such discretion is necessary because:

> the client on the one hand is entitled to be represented by an attorney in whose ability and fidelity he has confidence; the unjustly discharged attorney is entitled on the other to reasonable protection, especially if he has an interest in or a lien on the proceeds of the suit, and he always has a lien on any papers in his hands; but the court and the opposite parties to the case ought not to be unduly delayed or vexed by a collateral dispute between an attorney and his client.

Id. at 883. Moreover, "the district court is limited to setting fees that arise from the underlying action; it may not set fees for work done on unrelated actions." Sheridan, 766 F.2d at 94.

Upon due consideration, the Court will decline to exercise its discretion to determine the fees, if any, due to Former Counsel. While the Court initially reserved jurisdiction following the substitution of counsel to determine the compensation owed to Former

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Counsel, if any, they failed to file an appropriate motion at that time. Approximately two months later, when the Tama Parties filed a Notice of Voluntary Dismissal Without Prejudice (Doc. 72), Former Counsel still did not file a motion for fees. Nor did Former Counsel file a request for their fees when the Court later entered an Order (Doc. 101) dismissing the Tama Parties from this action. Indeed, Former Counsel failed to raise the issue of their fees until almost two years after the Court dismissed the Tama Parties from this case, and over three years after they were removed as counsel. As a result of this delay, the clients from whom Former Counsel seek fees are no longer parties before this Court.

In addition, a large portion of the fees requested in the Fee Application pertain to matters "not strictly appertaining to this case alone," most notably, a request for the fees of a law firm that never even appeared in this action. See Doggett, 148 F.2d at 883; Fee Application, Ex. 1, Ex. 2 at 1-4. As the Court has no jurisdiction to adjudicate the fee dispute with respect to the fees incurred in separate matters, it is more efficient for the parties to litigate the issue of fees in a forum that can provide complete relief. See Myers v. Central Fla. Invs., Inc., No. 6:04-cv-1542-Orl-28DAB, 2010 WL 2541792, at *4 (M.D. Fla. May 26, 2010). Perhaps more importantly, here, in the action that Former Counsel brought on behalf of the Tama Parties, "[t]here turned out to be no recovery, no fund on which a lien could possibly be asserted." Doggett, 148 F.2d at 883. Thus, given the long delay in pursuing their fees, the dismissal of the Tama Parties from this case, the request for fees not incurred in this action, and the lack of any recovery from which to award fees, the Court will exercise its discretion to remit "the whole matter of the attorney's compensation . . . to a plenary suit against his clients." Id.; see also Pay Television of Greater N.Y., 766 F.2d at 94.

Accordingly, for the reasons set forth above, the Court will overrule the Objections, adopt the Magistrate Judge's recommended resolution, and deny the Fee Application without prejudice to Former Counsel pursuing such fees in a separate action.  In light of the foregoing, it is

**ORDERED**:

1. For the reasons set forth above, the Objections of Cherry Group, LLC, Dr. Glenn W. Cherry, Charles W. Cherry and Percy Squire to November 29, 2011 Report and Recommendation (Doc. 127) are **OVERRULED**, and the Court **adopts** the resolution recommended in the Report and Recommendation (Doc. 126).

2. The Initial Fee Application of Former Counsel for Tama Broadcasting, Inc. (Doc. 123) is **DENIED without prejudice** to Former Counsel pursuing their fees in a separate action.

3. The Clerk of the Court is **DIRECTED** to remand this case to the Circuit Court of the Fourth Judicial Circuit, in and for Nassau County, Florida, and to transmit a certified copy of this Order to the clerk of that court.

4. The Clerk of the Court is further directed to terminate all pending motions or deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 16, 2014.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Clerk of the Circuit Court,
     of the 4th Judicial Circuit,
     in and for Nassau County